T.C. Summary Opinion 2002-111

UNITED STATES TAX COURT

DAN B. ISAAC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7581-01S.                    Filed August 28, 2002.

Dan B. Isaac, pro se.

<u>Frank J. Jackson</u>, for respondent.

POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

[1]    Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $28,125 in petitioner's 1997 Federal income tax and additions to tax under sections 6651(a)(1), (a)(2), and 6654(a) in the respective amounts of $6,328.12, $4,500, and $1,515.18. After concessions,[2] discussed infra, the issues are petitioner's basis in 600 shares of IBM stock sold by petitioner on September 19, 1997, and petitioner's entitlement to a dependency exemption deduction and head of household filing status. Petitioner resided in New York, New York, at the time the petition was filed.

The facts may be summarized as follows. Petitioner did not file a Federal income tax return for the 1997 taxable year. In paragraphs 9 and 10 of the Stipulation of Facts, the parties stipulated that the amount realized by petitioner from the sale of securities was $112,340 and that of this amount "Stock in the amount of $52,419.00 had a cost basis of $39,411.00 resulting in a $13,008.00 gain of which $1,701.00 is long term gain, $12,286.00 is a short term gain and $979.00 is short term loss." The parties also agree that the difference between the gross sales ($112,340) and the $52,419 referred to above is $59,921[3]

---

[2]  It is stipulated that during 1997 petitioner received (1) Social Security benefits of $11,397, interest income of $39, dividend income of $1,269, and royalty payments of $1,000. Also, petitioner has never disputed that he is liable for the failure to file and failure to pay additions to tax under secs. 6651(a)(1), (a)(2), and 6654(a).

[3]  The brokerage statement shows that the amount received was
(continued...)

and is from the sale of 600 shares of IBM stock sold on September 19, 1997.

The basic problem with this case is that we have precious little evidence. During 1996 and 1997, petitioner made a number of trades including long and short stock transactions and "puts" and "calls". We have end-of-the-year tax statements for 1996 and 1997 and three different confirmations of the sale of 600 shares of IBM stock. One of the confirmations canceled another purchase confirmation. None of the confirmations refer to specific stock purchased and neither do the tax statements. Although petitioner received monthly statements, none of them were introduced into evidence. With this sparse record, we do the best that we can in sorting out the facts. We must rely on inferences, and absolute certainty is impossible. To a great extent these uncertainties bear heavily against petitioner because the inexactitude is of his own making. See Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). For convenience we have combined our findings of fact and discussion.

1. Transaction Involving IBM Stock

At trial, petitioner testified that he frequently traded IBM stock, but he could not identify any purchase of the 600 shares. He further testified that he did not know his cost basis for the

---

[3](...continued)
$59,923. The difference ($2) from the stipulated figure appears to be the result of rounding figures in the stipulation.

600 shares.  We note that on May 27, 1997, IBM stock was split 2 for 1.

The tax statement for 1996 shows that petitioner sold 100 shares of IBM stock for $11,249.62 on March 8, 1996, purchased 200 shares of IBM stock for $23,275 on March 11, 1996, and had received a dividend from IBM of $25 on March 11, 1996.  The receipt of this dividend indicates that he must have owned IBM stock prior to the sale on March 8, 1996, because the distribution record date had to have been prior to that date.  Furthermore, the quarterly dividend rate for IBM at that time was $.25 per share, indicating that petitioner owned 100 shares.  The 1996 statement also shows that petitioner sold 100 shares on December 30, 1996.  Thus, at the end of 1996, petitioner owned 100 presplit shares of IBM stock purchased for $11,637.50 ($23,275 divided by 2) on March 11, 1996.

During 1997, the statement for that year shows that petitioner purchased:  100 presplit shares of IBM stock for $15,287.50 on January 28, 1997, 200 postsplit shares of IBM stock for $20,550 on September 26, 1997, 400 postsplit shares of IBM stock for $38,975 on October 28, 1997, and 200 postsplit shares of IBM stock for $20,237.50 on October 29, 1997.  That statement also shows that he sold 100 presplit shares on January 23, 1997, 100 presplit shares on May 16, 1997, and the 600 postsplit shares on September 19, 1997.

From this we distill the following. First, prior to March 8, 1996, petitioner owned 100 shares of IBM stock, as evidenced by the fact that he received the March 11, 1996, dividend. Second, during 1996, petitioner purchased and sold 200 shares of IBM stock. He, therefore, still owned the same number of shares that he owned prior to March 11, 1996. Third, during January 1997, petitioner purchased 100 shares and sold 100 shares of presplit stock.

During 1997, petitioner purchased 900 shares and sold 800 shares as follows:

| Transaction | | | | Balance of Shares |
|---|---|---|---|---|
| 1997 Opening Balance IBM Shares | | | | 100 |
| Sell | 1/23 | 100 | 15,374 | -0- |
| Buy | 1/28 | 100 | 15,287 | 100 |
| Sell | 5/16 | 100 | 15,424 | -0- |
| May 27, 1997 - 2:1 Stock Split | | | | |
| Sell | 9/19 | 600 | 59,923 | (600) |
| Buy | 9/26 | 200 | 20,500 | (400) |
| Buy | 10/28 | 400 | 38,975 | -0- |
| Buy | 10/29 | 200 | 20,237 | 200 |

The cost of shares is petitioner's basis for determining a gain or loss on the transaction. See secs. 1011, 1012, 1016. In attempting to identify which shares were sold, and in the absence of other identification, we use the first-in first-out method of accounting. Kluger Associates, Inc. v. Commissioner, 617 F.2d 323, 326-327 (2d Cir. 1980), affg. 69 T.C. 925 (1978); sec. 1.1012-1(c)(1), Income Tax Regs. With regard to the sale on January 23, 1997, this stock was purchased on March 11, 1996, for

$11,637.50; there was, therefore, a short-term capital gain of $3,736.50. With respect to the May 16, 1997, sale, this stock was purchased on January 28, 1997, for $15,287 and sold for $15,424, resulting in a short term capital gain of $137. With regard to the September 19, 1997, sale, petitioner owned no shares of IBM stock and this must have been a short sale that was covered on September 26, 1997 (200 shares for $20,500) and on October 28, 1997 (400 shares for $38,975) with income realized in the amount of $548 ($59,923 - ($20,500 + $38,875)). To the extent, however, that any of these transactions were included in paragraph 10 of the Stipulation of Facts and are inconsistent with that stipulation, the stipulation will control in the Rule 155 computation.

## 2. Other Issues

Initially, we observe that petitioner has the burden of proof.[4] When this case was called from the calendar on February 4, 2002, there had been no meaningful communication with respondent's counsel. Petitioner was instructed to get his records and meet with counsel for respondent that day. Petitioner did obtain some records and met with counsel. The case was recalled on February 5, 2002, and set for trial 8 days

---

[4] Sec. 7491(a)(1) places the burden of proof on respondent in certain cases. Petitioner, however, has not satisfied the requirements of sec. 7491(a)(2). Accordingly, sec. 7491(a)(1) has no bearing on the resolution of this case.

later at 3:00 p.m. on February 13, 2002. At a pre-trial conference the morning of February 13, 2002, petitioner for the first time raised the question whether he was entitled to various deductions, including a dependency exemption deduction for his daughter, certain alleged personal and business expense deductions, and losses from trading in options. None of these items were raised in the petition, and, with one exception, we decline to entertain these issues at this late date.[5] See Rule 34(b)(4). Allowing petitioner to belatedly raise these issues would be unfair to respondent. See <u>Toyota Town, Inc. v. Commissioner</u>, T.C. Memo. 2000-40, affd. sub nom. <u>Bob Wondries Motors, Inc. v. Commissioner</u>, 268 F.3d 1156 (9th Cir. 2001).

The one exception concerns petitioner's dependency exemption claim. Petitioner is unmarried and has a daughter who lives with him. Petitioner's daughter was 10 years old during the year at issue and received approximately $900 a month or $10,800 per year from Social Security. Petitioner did not pay more than half of the daughter's support. Petitioner argues that he is entitled to claim a dependency exemption deduction for his daughter.

---

[5] We note, however, that petitioner has not substantiated the alleged business deductions and it appears that even if we were to accept the evidence, such as it is, with regard to the personal deductions, the amount would not exceed the basic standard deduction contained in sec. 63(b). Finally, while petitioner did engage in option trading, the record is devoid of evidence from which we could even make an estimate of his gains and losses.

Section 152(a) defines a dependent, inter alia, as a daughter of the taxpayer "over half of whose support, for the calendar year * * * was received from the taxpayer".  Since petitioner did not contribute over half of his daughter's support, she is not a dependent and petitioner is not entitled to claim a dependency exemption deduction for his daughter under section 151(c).

Nonetheless, under section 1(b), a head of household is entitled to a more favorable filing status than a single individual.  A head of household is defined, inter alia, as an individual who is not married and maintains a household "which constitutes for more than one-half of such taxable year the principal place of abode" of an unmarried daughter.  Sec. 2(b)(1)(A)(i).  Petitioner satisfies these requirements and is entitled to head of household filing status.

After the stipulation was filed and this case was tried, petitioner moved to reopen the record.  Respondent objected as to some of the documents that petitioner lodged with the motion.  To the extent that we found the documents relevant and trustworthy, we have incorporated them in this opinion.  In all other respects, petitioner's motion is denied.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>An appropriate order will</u>
<u>be issued, and decision will</u>
<u>be entered under Rule 155</u>.